# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Commonwealth of Virginia

v.

William Peele

October 28, 2000

Case No. CR-00-1444

BY JUDGE DEAN W. SWORD, JR.

This matter comes before the Court upon the motion of the defendant seeking the suppression of certain evidence, cocaine, obtained by the police following the search of his residence pursuant to a warrant issued by a magistrate for this jurisdiction. Since the resolution of the question depends heavily upon the facts, we shall first review those that are pertinent to our decision.

On March 2, 2000, Det. B. J. Karpowski, II, of the Portsmouth Police Department appeared before a magistrate and filed an affidavit stating that "on 3-1-00 [he] spoke with a confidential and reliable informant regarding an individual supplying crack cocaine . . ." in the City of Portsmouth. (Certain other information regarding the method of operation was provided by the informant.) Further, the identity of the individual was given as "Will," "a black male, tall, medium brown skinned."

The informant also told the detective the area where the individual lived as well as the make, model, year, and color of his car, including the customary place where the car was parked. Based upon this initial information, the detective went to the area in question and observed such a car and obtained its license plate number. Follow-up investigation revealed the car was registered to the defendant, William Peele.

On March 2, 2000, a surveillance was established and the defendant was observed to leave 613 Seventh Street, Portsmouth, get in the subject car and proceed to drive away. The investigation had also established that the defendant had a suspended driver's license that authorized him to drive only to and from work and to ASAP meetings.

The affiant further stated that Sgt. J. L. Borges of the Portsmouth Police then attempted to make a traffic stop. While in the process of this procedure, Sgt. Borges observed the defendant throw a bag out of the car window prior to pulling over. Sgt. Borges stopped and recovered the item, which was suspected to be illegal narcotics. (While not relevant to this issue, a lab analysis determined this item to be 3.0 grams of cocaine base.)

Following the arrest of the defendant, he gave his address as 613 Seventh Street, Apartment D, Portsmouth, Virginia. 613 Seventh Street is an apartment building where the individual units are identified by letters. Peele also told the detective that he resided at this address with his girlfriend who had the surname Bagwell.

Prior to obtaining the search warrant, Det. McAndrew and other detectives were sent to "secure the apartment" to prevent disposal of evidence, while the warrant was obtained. The detectives had obtained a door key from the defendant prior to going to Seventh Street. Upon arrival at Seventh Street, Det. McAndrew made contact at the rental office and learned that both apartment D and F were rented to someone named Bagwell. The detectives then tried the key and found that it opened the door of unit F. They conducted a quick examination of the apartment to determine if it was empty. Nothing was found "in plain view" during this examination.

Based upon the information given by the informant and Det. Karpowski's experience as a narcotics investigator that it was probable that the main cocaine supply of the defendant would be at his apartment, the search warrant was issued.

Upon a search of the premises at 613 Seventh Street, Apartment F, Portsmouth, Virginia, the police discovered what is now determined to be two items of illegal narcotics, eleven plastic bag corners containing 59.6 grams of cocaine base and one plastic bag corner containing 2.9 grams of cocaine base.

A copy of the affidavit for the search warrant is attached as Appendix A and a copy of the search warrant is attached as Appendix B.

It is significant to note that the affidavit also contained the following sentence "The detectives made entry into the apartment to secure it and while, clearing each room for officer safety, observed pictures on the wall of William Peele." The significance of this leads us to the argument made by the defendant to support suppression.

The defendant argues that, because the police made a warrantless entry into his residence, any information obtained could not be properly used in the affidavit to support the issuance of the search warrant. No challenge is being made to the reliability of the informant.

In deciding this matter, the court views the issue as a two part problem: (1) were the police justified in taking steps to secure the property prior to obtaining the warrant (including the entry into the premises) and (2) does the inclusion of the information about the defendant's photographs in the affidavit in some way create a constitutional issue as to the validity of the warrant and the subsequent search.

In support of the right of the police to secure the premises while the warrant was obtained, the Commonwealth directs the court to *Crosby v. Commonwealth*, 6 Va. App. 193, 367 S.E.2d 730 (1988). Crosby was confronted on the street by police who had received information from an informant that he was selling drugs from his apartment and that drugs were at that location. At that time, he was detained and advised that the police intended to obtain a search warrant. When asked if anyone else was in the apartment, Crosby declined to answer but did give the key to his apartment to the police. Because the police had information that others had been in the apartment within the preceding ten hours and because Crosby was detained "just around the corner" from his apartment, the detectives went to his apartment alone "to determine whether anyone was there who would destroy evidence." *Id.* at 196. The police entered the apartment using Crosby's key and discovered a sawed-off shotgun on the bed.

The premises were then secured and a search warrant obtained using information from the informant as well as the discovery of the sawed-off shotgun in plain view. A subsequent search of the apartment pursuant to the warrant discovered drugs and drug paraphernalia.

At a suppression hearing, the trial court denied defendant's motion upon a theory of consent based upon the delivery of the key. This theory was subsequently rejected by the Court of Appeals. *Crosby* at 198-99.

The Commonwealth, however, made a second argument in support of the search and seizure based upon the right of the police to secure the premises "because [they] had a reasonable belief that third parties who would destroy the evidence might be inside." *Id.* at 199.

In its acceptance of this argument, the Court of Appeals established a three-prong test:

> (1) police officers have probable cause to believe evidence is on the premises;

(2) delaying entry would create a substantial risk that evidence will be lost or destroyed or the critical nature of the circumstances prevents the use of any warrant procedure; and

(3) the police must not be responsible for creating their own exigencies.

*Id.* at 201.

The final corollary is that, if an entry qualifies under this rule, any "evidence in plain view . . . was subject to seizure under the plain view exception to the warrant requirement." *Id.* at 202.

A review of the cases decided by the Court of Appeals since *Crosby* (there being none before the Supreme Court) finds that it remains valid authority. Our search reveals seven cases. Five of the seven are matters involving consent to search, with two addressing the second issue of securing the premises.

*Quigley v. Commonwealth,* 14 Va. App. 28, 414 S.E.2d 851 (1992), considered a search where the court found a violation of item 3 of the *Crosby* test (the police created the exigent circumstances). *Id.* at 38-39.

*Commonwealth v. Thornton,* 24 Va. App. 478, 483 S.E.2d 487 (1997), was a case where police responded to assist the fire department on a report of a fire. After the fire department employees entered an unoccupied apartment (no one was home), they discovered what they believed to be illegal narcotics in plain view. In finding the entry of the police, who were already on the scene to assist the fire department, lawful, the Court of Appeals cited *Crosby* as authority for the right of the police to "conduct a limited security check" of the premises to prevent the destruction of evidence. *Id.* at 486.

Next we shall apply the *Crosby* test to this matter.

Was there adequate probable cause for the police to believe evidence was located at the defendant's apartment, reserving for the moment the issue of which apartment was occupied by Peele.

The informant advised the police that "Will" was supplying crack cocaine and he was making deliveries to his street dealers on a daily basis between 9 and 9:30 a.m. He further informed that, when the dealers sold out, "Will" would return to his apartment to renew his supply. Det. Karpowski, based upon his police experience, could also confirm this conduct as being typical in the drug trade. The court is satisfied that this information would provide a reasonable nexus to allow the search of "Will's" residence for drugs and related paraphernalia.

The next issue becomes more problematical. Where did "Will" live? The informant was able to provide police with enough information to narrow the

field: "the newly remodeled apartment complex beside Southside Gardens Apartments." He also advised that "Will" parked his car in a certain way in front of his apartment. Once again, the police, using their personal knowledge, were able to identify the location with more specificity. Subsequent surveillance narrowed the location even further with the defendant being observed leaving 613 Seventh Street.

Following the arrest of the defendant,[1] he provided an address of 613 Seventh Street, Apartment D.

While this does not end our inquiries, the court would be of the opinion that item 1 of the *Crosby* test would be met and the police would have had probable cause to believe evidence was located at the defendant's apartment, which they believed to be "D."

Item two of the *Crosby* test requires a finding that delay in making entry would cause a substantial risk that evidence would be lost, the court being of the opinion that there are no critical circumstances preventing the warrant procedure. A comparison with our facts show both similarities and dissimilarities with *Crosby*. In each case, there was information of drug sale and possession provided to police by an informant. Both defendants were arrested near their place of residence. (Seventh Street and Jefferson Street are in the same general neighborhood.) The police in *Crosby*, however, had information of others at the apartment, while in this case the issue of some one else living with Peele was developed after his arrest. In *Crosby*, there was also information that drugs were being sold at the apartment, while this defendant was using his apartment to store his inventory of cocaine. Common sense might suggest that if an accomplice (using the word in a very broad sense) discovered that the defendant had been arrested and there were illegal narcotics at the apartment, prudence might dictate their removal or destruction. Just as obvious, the police would not want that to occur.

How then do we evaluate whether "a substantial risk" existed in our case? Without some evidence, the court might well obviate the necessity of a warrant. (Go secure and if you cannot find anything in plain view get a warrant.) Such a standard is neither desirable nor would it pass constitutional muster on appeal. My view of *Crosby*, however, is that knowledge of others having reasonable access to the contraband may well be enough unless it is clear that the police were being lazy or in some other way trying to avoid the warrant process, assuming that there was no other method of obtaining access to search without a warrant. While this court encourages the police to obtain

---

[1] The circumstances of the traffic stop resulting in the recovery of 3.0 grams of cocaine base are not challenged at this stage of these proceedings.

warrants prior to any search for obvious reasons, we also recognize there are circumstances where the process of obtaining a warrant may allow the evidence to vanish. Upon learning that the defendant's girlfriend also shared his residence, the police sent others to secure the scene while a warrant was to be obtained. We find that this was appropriate under the *Crosby* rule and satisfies item two of the test.

The final criterion of *Crosby* is whether the police created the exigent circumstances. There is no trickery or other improper conduct by the police, and the court finds that their conduct was reasonable and prudent, satisfying the third *Crosby* criterion.

Thus the court will find that the police had a right to secure the apartment by briefly inspecting its interior for someone who might have been in a position to conceal or destroy evidence.

How then does all of this relate to the ultimate search of the defendant's apartment? None of the evidence discovered was found until the search with the warrant was conducted. Therefore, the only issue is whether or not the affidavit was in some way tainted by the inclusion of the information regarding the defendant's photographs on the wall.

While we have already determined that probable cause existed to search the defendant's residence, the police were faced with one other problem in obtaining their warrant, just which apartment was correct. At the hearing, it was stipulated that, following this arrest, detectives acquired certain information indicating the residence to be unit B. Then the defendant indicated that unit D was correct. At this point, the police were concerned as to the correct unit for both practical and legal reasons. From the practical point of view, one would be unlikely to find anything if the wrong unit was searched, and, from the legal point of view, the warrant must correctly identify the unit. See *Manley v. Commonwealth*, 211 Va. 146, 176 S.E.2d 309 (1970), and *Brown v. Commonwealth*, 212 Va. 672, 187 S.E.2d 160 (1972).

Based upon the various actions taken by the detectives to obtain the correct unit number (checking with the apartment management and trying the key to determine which lock worked), it is obvious to me that some concern about the correct unit existed in the mind of the police and they intended by independent investigation to be as careful as possible. In fact, the verification of the unit was not only good police work, but most likely legally required to obtain a valid warrant. *Brown* and *Manley, supra*. Only when the police put the key in the lock to see if it would open the door was the issue resolved and it was only reasonable to enter to either protect themselves or to protect the evidence that might be subject to loss.

The issue of the entry in unit F and the discovery of the photograph, even if determined to be improper, would not invalidate the search warrant. The court may edit certain information contained in the affidavit and, if the remaining information is sufficient to establish probably cause, find the warrant valid. *Williams v. Commonwealth*, 26 Va. App. 612, 496 S.E.2d 113 (1998).

In *Williams* the court opined:

It is well established that "the inclusion of tainted evidence does not invalidate a search warrant," *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993) . . . and suppression is not required "if, excluding the illegally obtained information, probable cause for the issuance of the warrant could still be found. . . ."

*Id.* at 619 (citing several other decisions of the Fourth Circuit Court of Appeals).

We have previously determined probable cause to search the defendant's residence was established early in the investigation. Follow-up investigation determined the correct unit when the key opened the lock to unit F. At this point, the police had all of the information required for a valid warrant. Even though we have expressed the opinion that the entry into unit F was permissible, the information about the photographs was cumulative and if deleted in no way changes the validity of the warrant.

The court finds the search pursuant to the warrant to be proper and denies the motion of the defendant to suppress evidence obtained in the search.